**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

David Mueller,

                              Plaintiff,

v.

SPX Corporation and Aetna Life
Insurance Company,

                              Defendants.

Civ. No. 12-1121 (RHK/AJB)
**MEMORANDUM OPINION
AND ORDER**

---

Alesia R. Strand, Thomas J. Beedem, III, Beedem Law Office, Minneapolis, Minnesota, for Plaintiff.

Archana Nath, Gary M. Hansen, Heidi O. Fisher, Oppenheimer Wolff & Donnelly LLP, Minneapolis, Minnesota, for Defendant SPX Corporation.

Michael A. Hatch, Jerry W. Blackwell, Blackwell Burke PA, Minneapolis, Minnesota, for Defendant Aetna Life Insurance Company.

---

**INTRODUCTION**

In June 2008, Plaintiff Donald Mueller began to experience persistent lower back pain. In 2011, his doctor recommended spinal surgery but his insurer, Defendant Aetna Life Insurance Company ("Aetna"), denied coverage having determined the operation was not "medically necessary." Mueller appealed the denial of benefits, but both Aetna and Defendant SPX Corporation ("SPX"), Mueller's employer and the insurance plan's administrator, affirmed the denial. In response, Mueller commenced the instant action against Defendants alleging violations of the Employee Retirement Income Security Act

of 1974 ("ERISA").  SPX and Mueller now cross-move for summary judgment.[1]  For the reasons set forth below, the Court will grant SPX's Motion and deny Mueller's.

## BACKGROUND

The following facts are largely undisputed and based on the administrative record.

Mueller began experiencing lower back pain in June 2008.  In October 2010, he was referred to Dr. Francis Denis at the Twin Cities Spine Center.  Dr. Denis ordered and reviewed x-rays of his lumbar spine, and noted L4-5 grade I spondylolisthesis.  He also requested and reviewed a previous MRI of Mueller taken at the Mayo Clinic.  Dr. Denis concluded that Mueller's L4-5 vertebrae were the "primary source" of his pain and recommended a "posterior fusion of L4-5 with decompression bilaterally."  (Admin. R. 294.)

At the time, Mueller worked for SPX and was covered by the SPX Corporation Comprehensive Medical Plan—Plan B (the "Plan"), an employee welfare benefit plan governed by ERISA.  Aetna acts as the Plan's claims administrator and is responsible for receiving and reviewing claims for benefits, reviewing denied claims, and preliminary appeals.  SPX acts as plan administrator and it determines second-level appeals and pays the benefits.  The Plan grants SPX discretion with respect to its administration, operation, and interpretation.

The Plan only covers services that are "medically necessary."  To be considered "medically necessary," a service must be (1) in accordance with generally accepted

---

[1] Although Aetna has appeared in this matter and is independently represented by counsel, it has not responded to Mueller's Motion or brought a motion of its own.

standards of medical practice, (2) clinically appropriate and effective, (3) not primarily for the convenience of the patient or healthcare provider, and (4) not more costly than an equally effective alternative service or sequence of services.  (Id. at 87.)  The Plan defines "generally accepted standards of medical practice" as "standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, or otherwise consistent with physician specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors."  (Id.)  The Plan excludes services that are considered experimental, investigational, or not medically necessary.

To aid in coverage decisions, Aetna publishes bulletins summarizing its conclusions as to the particular conditions for which a treatment is "medically necessary."  One such bulletin, "Aetna's Clinical Policy Bulletin for Spinal Surgery for Laminectomy and Fusion" (the "Bulletin"), provides that a lumbar spinal fusion is medically necessary for:

> E. Spondylolisthesis with segmented instability confirmed by imaging studies (e.g. CT or MRI), when both of the following criteria are met:
>    1. Spondylolisthesis, Grade II, III, IV, or V . . . and
>    2. Symptomatic unremitting pain that has failed six months of conservative management; or
>
> F.  Spinal stenosis with unremitting pain confirmed by imaging studies (e.g., CT or MRI) that has failed 3 months of conservative management when any of [three additional criteria] is met.

(Id. at 234.)

In March 2011, Mueller sent Aetna a request for preapproval of his spinal fusion and decompression, accompanied by an x-ray report, MRI report, Dr. Denis's

consultation note, and a few letters from Dr. Denis describing Mueller's condition and need for surgical treatment. He also submitted Aetna's standard spinal-surgery precertification form, which Dr. Denis had completed. The consultation note, x-ray report, letters, and precertification form all indicated that Mueller had been diagnosed with grade I spondylolisthesis and degenerative disc disease. The precertification form and one of the letters from Dr. Denis also indicated that he suffered from spinal stenosis, but this diagnosis was not reflected in Dr. Denis's consultation note, his reading of the x-ray, his other letters, or the MRI report in Mueller's claim file.

Upon receipt of Mueller's application, Aetna assigned Dr. Ravi Govila, a board-certified internist, to review his medical records and request. Dr. Govila recommended that Aetna deny coverage because he concluded there was "no documentation of grade 2 or higher spondylolisthesis or spinal stenosis." On April 4, 2011, Aetna informed Mueller that the surgery was not covered by the Plan, stating:

> We have reviewed information received about the member's condition and specific circumstances using [the Bulletin]. Based on this review, coverage for spinal fusion is denied. The information received shows that the member does not meet the following criteria: (A) Spondylolisthesis (Grade II, III, IV, or V) or (F) Spinal stenosis.

(Id. at 284–85.) Mueller appealed the decision and requested a complete copy of his claim file.

On appeal, Aetna referred Mueller's file to a board-certified orthopedic surgeon, Dr. Joseph Thomas. Dr. Thomas determined that "the [MRI] scan and x-ray of his lumbar spine was with findings of Degenerative Disc Disease and Grade 1 Spondylolisthesis. There is no evidence of spinal stenosis noted." (Id. at 231.) He

- 4 -

concluded, therefore, that a spinal fusion was not medically necessary.  On May 20, 2011, Aetna affirmed its denial, laying out the Bulletin's criteria for a spinal fusion and concluding that Mueller did not meet them.  (Id. at 300–01.)  Specifically, Aetna commented that Mueller's records reflected degenerative disc disease and grade I spondylolisthesis, but there was "no evidence of spinal stenosis noted."  (Id. at 301.)

In July 2011, Mueller appealed the decision for a second time and again requested a complete copy of his claim file, which he had not yet received.  In support of his appeal, Mueller submitted an additional letter from Dr. Denis challenging Aetna's denial.  In his letter, Dr. Denis characterized the Bulletin's criterion that a patient must have at least grade II or higher spondylolisthesis to need a spinal fusion as "ridiculous and unfounded" and asserted that "most of the papers . . . written on the topic and reporting surgical cases, are recording cases with grade 1 spondylolisthesis."  (Id. at 147.)  He believed Aetna's denial was based on "scientifically unproven criteria."  (Id.)  However, he did not cite or attach any published literature or clinical evidence to support his assertions.  His letter did not mention spinal stenosis or address whether Mueller's diagnosis satisfied the Bulletin's criteria.

Pursuant to the terms of the Plan, Aetna forwarded Mueller's second appeal to SPX, the plan administrator, for review.  SPX referred the claim to Dr. Victor Parisien, a board-certified orthopedic surgeon.  Using the Bulletin as his criteria, Dr. Parisien concluded that a spinal fusion was "not the appropriate care for Mr. Mueller's condition and was not medically necessary."  (Id. at 204.)  After reviewing the file and Dr. Parisien's conclusions, SPX affirmed the denial of coverage.  It concluded that

Mueller's medical diagnosis was "grade 1 spondylolisthesis with a certain amount of translation of flexion/extension," which "does not meet the requirements outlined in [the Bulletin] to be considered medically necessary." (Id. at 127.)

Mueller then commenced the instant action against Defendants alleging ERISA violations for the denial of coverage and for failing to provide his claim file as requested. He now moves for summary judgment against both Defendants; SPX cross-moves for summary judgment. For the reasons set forth below, the Court will grant SPX's Motion and deny Mueller's.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Mueller's Motion, the Court views the record in the light most favorable to SPX and Aetna, and when considering SPX's Motion, the Court views the record in the light most favorable to Mueller. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011) (*per curiam*).

## ANALYSIS

### I. SPX's Denial of Benefits

#### A. Abuse-of-Discretion Standard

Where an ERISA plan gives the plan administrator discretion to determine eligibility for benefits and construe the terms of the plan, as is the case here, the Court may only disturb the administrator's decision to deny benefits upon a showing that it abused its discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Whether SPX abused its discretion by denying Mueller benefits is a question of reasonableness. "[The Court] must affirm if [it finds that] a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision. A reasonable decision is one based on substantial evidence that was actually before the plan administrator. Substantial evidence is more than a scintilla but less than a preponderance." Smith v. Unum Life Ins. Co. of Am., 305 F.3d 789, 794 (8th Cir. 2002) (internal quotations and citations omitted). The Court

"may not substitute its own judgment" for SPX's. Rittenhouse v. UnitedHealth Grp. Long Term Disability Ins. Plan, 476 F.3d 626, 632 (8th Cir. 2007).

When determining whether SPX abused its discretion, the Court must factor in the conflict of interest which stems from SPX's dual roles as the entity which determines eligibility for benefits and pays them. See Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038–39 (8th Cir. 2010). The weight of this factor depends on whether there is evidence that the administrator has a history of biased claims administration or has taken steps to reduce the risk of such bias. Id. at 1039. In the instant case, Mueller has not demonstrated that SPX has a history of biased claims administration. SPX, on the other hand, calls attention to its use of a third-party claims administrator (Aetna) and an independent medical examiner as procedural safeguards against bias. Furthermore, the use of fixed criteria, such as those in the Bulletin, promotes uniformity in coverage decisions. Therefore, this factor will carry little weight in the Court's analysis; rather, it "will act as a tiebreaker when the other factors are closely balanced." Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008); id. at 112 (An administrator taking "active steps to reduce potential bias and promote accuracy" makes the conflict "less important (perhaps to the vanishing point).").

Because the administrative record is undisputed, Mueller's and SPX's Motions are essentially two sides of the same coin—both hinge on whether SPX's decision that Mueller's surgery was not "medically necessary" under the Plan was reasonable and supported by substantial evidence. If it was, SPX is entitled to summary judgment in its favor; if not, Mueller is entitled to summary judgment.

B.     **Reasonableness of SPX's Decision**

Mueller challenges SPX's decision to deny benefits for two reasons.  <u>First</u>, Mueller asserts it was unreasonable to rely on the Bulletin to determine coverage instead of the Plan's language.  However, insofar as the Bulletin is an interpretation of the Plan's medical-necessity requirement, SPX was entitled to rely on it if the interpretation was reasonable.  To determine reasonableness, the Court considers whether the Bulletin: (1) is consistent with the Plan's goals, (2) renders any language in the Plan meaningless or internally inconsistent, (3) conflicts with ERISA, (4) is consistently followed, and (5) is contrary to the clear language of the Plan.  <u>See</u> <u>Finley v. Special Agents Mut. Benefit Ass'n, Inc.</u>, 957 F.2d 617, 621 (8th Cir. 1992).  Of these factors, Mueller disputes only whether the Bulletin is consistent with the Plan's language.

Under the terms of the Plan, a service must be "in accordance with generally accepted standards of medical . . . practice" in order to be considered "medically necessary."  The Plan defines these "generally accepted standards" as "standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical . . . community."  Conversely, if there are "insufficient outcomes data available" then a treatment is considered experimental or investigational and is not covered.  Mueller argues there is ample research supporting the use of spinal fusions to treat grade I spondylolisthesis so his surgery is "medically necessary" under the Plan's definition.  But he offers no evidence or research to support this contention, only Dr. Denis's bald assertions.  In contrast, the Bulletin reviews and summarizes medical literature on lower-back-pain treatment for twenty pages and cites

117 articles before concluding that spinal fusions are not medically necessary for grade I spondylolisthesis.  In the Court's view, the Bulletin's conclusions are plainly based on "credible scientific evidence published in peer-reviewed medical literature" and therefore consistent with the Plan's language.  Because the Bulletin is a reasonable interpretation of the Plan, SPX did not abuse its discretion by relying on it.  See Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 935 (8th Cir. 2010) ("[W]here plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination."); Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1199 (8th Cir. 2002) (administrator's decision to deny transplant as experimental after researching the treatment was reasonable).

Second, if SPX was entitled to rely on the Bulletin, Mueller argues it acted unreasonably by "ignoring" his diagnosis of spinal stenosis, which could have qualified him for the surgery under the Bulletin's criteria.  A review of Mueller's records reveals, however, that his alleged diagnosis is conspicuous mostly by its absence.  Only two documents he submitted refer to spinal stenosis, neither of which provides the basis for the diagnosis.  Dr. Denis included a "code" for spinal stenosis as one of Mueller's diagnoses on the precertification form and he filled out the portion of the form meant for patients with spinal stenosis.  But he also filled out the portion of the form meant for patients with grade II or higher spondylolisthesis and it is undisputed that Mueller's diagnosis was grade I.  This inaccuracy undermines the weight of the precertification form as evidence of Mueller's diagnosis.  Dr. Denis also mentions stenosis in a brief

letter to Mueller's (former) counsel. But Defendants were not required to accept these passing references to stenosis as a definitive diagnosis, absent some objective evidence or explanation to support it. See Darvell, 597 F.3d at 935 ("It is not an abuse of an ERISA plan administrator's discretion to ignore an opinion when the physician did not provide reliable objective evidence of testing or other proof to support the finding.") (internal quotation omitted).

The Court notes that any mention of spinal stenosis is markedly absent from Dr. Denis's consultation note, the x-ray report, the MRI report, and any of Dr. Denis's other letters. In addition, all three reviewing physicians opined that Mueller's records did not indicate stenosis. Even Dr. Denis neglected to mention stenosis in his letter challenging Aetna's denial of coverage. In addition, it appears that Mueller never pointed out his alleged diagnosis to Aetna or SPX during the appeals process leading up to this action, even though their denial letters explicitly concluded that he did not meet the criteria of either spinal stenosis or grade II or higher spondylolisthesis. In light of the foregoing, the Court concludes SPX did not abuse its discretion by denying coverage based on the lack of objective medical evidence indicating stenosis. See McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 925 (8th Cir. 2004) ("It is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence.").

## II.   SPX's Failure to Timely Provide the Claim File

Mueller seeks statutory penalties against SPX for its alleged failure to provide him "the requested claim file" within thirty days. Under 29 U.S.C. § 1132(c), a plan

administrator may be penalized if it fails to comply within thirty days with a request "for any information *which such administrator is required by this subchapter to furnish*" (emphasis added).  Mueller does not cite a single statute, regulation, or case to support his contention that a plan administrator is required to furnish a participant's or beneficiary's claim file.  Accordingly, the Court agrees with SPX that the failure to timely provide a claim file is not actionable under § 1132(c).  See Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 405–06 (7th Cir. 1996) (no violation of § 1132(c) where administrator failed to furnish a participant's claim file); see also Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 861 (8th Cir. 1999) (section 1132(c) does not apply to the failure to furnish "any document relating to a plan," only a specific set of plan documents).

### III.   Mueller's Claims Against Aetna

Mueller has moved for summary judgment against both SPX and Aetna.  Although Aetna has not responded to his Motion or brought a motion of its own, the Court will grant summary judgment in Aetna's favor.  Mueller's claims against SPX and Aetna are nearly identical—both denied benefits for the same reason and based on largely the same[2] evidence, and both failed to promptly send Mueller a copy of his claim file.  Mueller has had "considerable opportunity to address" his claims and the applicable defenses, both in his Motion against Aetna directly and in response to SPX's Motion.  Global Petromarine v. G.T. Sales & Mfg., Inc., 577 F.3d 839, 844 (8th Cir. 2009).  Because there is no genuine issue of material fact and the Court has already determined that Mueller's claims

---

[2] Dr. Parisien's opinion and Dr. Denis's October 6, 2011 letter were not added to the record until after Aetna's denials.

fail as a matter of law, the Court will grant summary judgment to Aetna.  See id. (court entitled to grant summary judgment in favor of nonmoving defendant after resolving a dispositive legal issue against moving plaintiff, noting it would be "a waste of judicial resources to have [the defendant] file a dispositive motion . . . because the issue had already been determined") (internal quotations omitted); Lester v. Wildwood Fin. Grp., Ltd., No. 99-2092, 2000 U.S. App. LEXIS 759, at *3 (8th Cir. Jan.21, 2000);  Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) (where nonmoving cross-defendants' "right to judgment turned on the same issue" as the moving plaintiff's and the losing parties had a "chance to come forward with their evidence," there was "no reason to delay the entry of judgment for the [cross-defendants]").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that SPX's Motion for Summary Judgment (Doc. No. 20) is **GRANTED** and Mueller's Motion for Summary Judgment (Doc. No. 22) is **DENIED**.  Mueller's claims against SPX and Aetna are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  February 22, 2013           s/Richard H. Kyle
                                   RICHARD H. KYLE
                                   United States District Judge